**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROSEMARY BROWN, as Special Administrator for the Estate of DAVID BROWN, deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 06 C 05725 |
| v. | ) ) | HONORABLE DAVID H. COAR |
| SMITHKLINE BEECHAM CORPORATION, d/b/a GlaxoSmithKline, | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Rosemary Brown ("Plaintiff"), as Special Administrator for the Estate of David Brown (deceased), filed suit against SmithKline Beecham Corporation ("Defendant") d/b/a GlaxoSmithKline under a variety of causes of action all related to product liability. Before the Court now is Defendant's Motion for Summary Judgment requesting an order against Plaintiff on each cause of action. For the reasons stated below, the Motion for Summary Judgment is GRANTED.

**FACTUAL BACKGROUND**

*Undisputed Facts Surrounding the Decedent's Stroke*

On December 17, 2002, David Brown ("Mr. Brown") died as a result of a stroke he suffered on July 25, 1995. On July 8, 1995, Mr. Brown purchased over-the-counter medication called Contac $^{(R)}$ in an effort to treat cold symptoms. Contac $^{(R)}$ contained an ingredient called phenylpropanolamine. In 1990, Mr. Brown was diagnosed with hypertension. Mr. Brown's

-1-

wife, Plaintiff, witnessed Mr. Brown take Contac (R) on July 11 and July 21 of 1995.  Both of these two instances of ingestion of Contac (R) occurred outside of the seventy two hours before Mr. Brown suffered his stroke.  Mr. Brown did not take Contac (R) regularly and Plaintiff did not see him take Contac (R) at any other times.

Dr. Shymal Bose, a specialist in internal medicine and gastroenterology, began treating Mr. Brown in 1990 for hypertension.  He prescribed medication for Mr. Brown, discussed the dangers of hypertension with him, including strokes, and advised him to stop smoking and drinking alcohol.  In February 1992, Dr. Bose saw Mr. Brown and took notes indicating Mr. Brown had not taken his hypertension medication in over nine months and was drinking alcohol heavily.  In October of that same year, Mr. Brown saw Dr. Bose again and told him that he was not taking his blood pressure medication.  Ultimately, Dr. Bose opined that Mr. Brown's stroke was caused by hypertension and he expressed no opinion as to whether phenylpropanolamine was associated with causing strokes.

Dr. Richardson, a board-certified physician who was the attending emergency physician that created Mr. Brown's emergency room report, stated that he did not form an opinion as to the cause of Mr. Brown's stroke.  Dr. Amrijit Bhasin, a board-certified neurologist who examined Mr. Brown after the onset of his stroke, opined to a reasonable degree of medical certainty that hypertension was the most likely cause of Mr. Brown's stroke.  Dr. Rhagu Singh, another board-certified neurologist, consulted on Mr. Brown's case and testified that to a reasonable degree of medical certainty that hypertension was the most likely cause of Mr. Brown's stroke.  Dr. Singh did not form an opinion as to whether phenylpropanolamine caused or contributed to Mr. Brown's stroke.

*Undisputed Procedural Facts*

This products liability action was originally filed against Defendant in an Illinois state circuit court of St. Clair county with Mr. Brown as the plaintiff. Mr. Brown subsequently died and the complaint was amended to include wrongful death causes of action. The Amended Complaint contains twelve causes of action against two named defendants- Defendant and GlaxoSmithKline PLC, a business entity located in the United Kingdom. Although not labeled as counts, the Court will treat each separately enumerated cause of action as a count for purposes of this motion.

Count I is entitled Fraud and Deceit- Fraudulent Concealment and is brought against both defendants. Count II is entitled Negligence and Negligent Misrepresentation and is brought against both defendants. Count III is entitled Negligence and is brought against both defendants. Count IV is entitled Negligence Per Se and is brought against both defendants. Count V is entitled Strict Liability in Tort- Failure to Warn and purports to be against both defendants. Count VI is entitled Strict Product Liability- Design Defect and is brought against both defendants. Count VII is entitled Breach of Implied Warranty of Merchantability and is brought against both defendants. Count VIII is entitled Breach of Express Warranty and is brought against both defendants. Count IX is entitled Survival Action Against Defendant GlaxoSmithKline, PLC. Count X is entitled Survival Action Against Defendant SmithKline Beecham Corporation.[1] Count XI is entitled Wrongful Death Action Against Defendant

---

[1] Plaintiff purports to bring Counts IX and X based upon 755 ILCS § 5/27-6 (West 2002). However, this statute does not create a cause of action itself, but is merely a vehicle by which certain other causes of action are transferred to a decedent's estate representative. *Owens v. Archer-Daniels-Midland Co.*, 30 F.Supp.2d 1082, 1803 (C.D.Ill. 1999). Thus, these counts fail to state claims upon which relief can be granted and are dismissed.

GlaxoSmithKline, PLC.  Finally, Count XII is entitled Wrongful Death Action Against Defendant SmithKline Beecham Corporation.[2]

Based upon diversity of citizenship of the litigants, the matter was removed to the federal district court for the Southern District of Illinois.  The case was then transferred to the Western District of Washington for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407, the federal statute dealing with multidistrict litigation.  Then, in May 2006, the case was remanded back to the Southern District of Illinois pursuant to a conditional remand order and subject to a pretrial order issued in the multidistrict proceeding.  Finally, on October 20, 2006, the case was transferred to this Court based on Defendant's successful motion to transfer venue.

In the multidistrict pretrial proceedings, the court ruled that summary judgment was appropriate in cases where plaintiffs ingested PPA (Contac $^{(R)}$) beyond seventy two hours before their stroke, because the Court previously held that the plaintiffs' MDL experts could not meet the *Daubert* standard for admissible opinion evidence in cases in which plaintiffs ingested PPA beyond 72 hours before their stroke.  *See In re Phenylpropanolamine (PPA) Products Liability Litigation*, 289 F.Supp.2d 1230 (W.D.Wash. 2003); and *In re Phenylpropanolamine (PPA) Products Liability Litigation*, (order granting summary judgment in part dated 05/04/2004) (J. Rothstein).

***Disputed Facts***

Three of Mr. Brown's children claim that he made statements to them individually that

---

[2] Plaintiff states that the wrongful death claims in Counts XI and XII pursuant to the Wrongful Death Act, and she cites to 755 ILCS § 5/27-6.  In fact, the Illinois Wrongful Death Act is actually codified at 740 ILCS §§180/0.01 through 2.2 (West 2002).  The Court will overlook Plaintiff's failure to cite to the appropriate statute and consider the merits of the claims.

establish he took Contac (R) within seventy two hours of the onset of his stroke on July 25, 1995. First his son, David Brown, Jr., states Mr. Brown told him on July 22, 1995 he took Contac (R) earlier that morning for a cold. Mr. Brown's daughter, Monica Brown, states that on the morning of July 23, 1995, he told her that he had been taking Contac (R) for a cold. Lastly, another daughter, Angela Brown, states that Mr. Brown told her on the evening of July 24, 1995 he had taken Contac (R) that morning before going to work.

## ANALYSIS

*Preliminary Issues*

In the Amended Complaint, Plaintiff alleges that GlaxoSmithKline PLC is the surviving entity created from a merger in 2000 between Defendant and Glaxo Wellcome Inc. Defendant asserts in its Memorandum in support of its Motion for Summary Judgment that Counts IX and XI are moot because Plaintiff failed to properly serve GlaxoSmithKline PLC. Plaintiff has decided not to address the issue. Since failure to address an issue is akin to waiving it, this Court hereby dismisses GlaxoSmithKline PLC from this action. *See, e.g., Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003). The issue is all the more confusing without regard to lack of proper service because it is not at all clear that GlaxoSmithKline PLC exists apart from Defendant and would be a proper party to this action. Plaintiff is suing Defendant as a separate entity, even though she alleges that Defendant merged with another entity to form GlaxoSmithKline PLC. Given the fact that Defendant survives as a Pennsylvania corporation defending against this action, it cannot be that Defendant merged into a different entity under foreign laws.

*Hearsay*

The only issue before this Court is whether the statements of Mr. Brown's children are admissible into evidence. Neither litigant contests the applicability of the multidistrict pretrial rulings to this action. Nor do either of the litigants contest that the statements at issue are hearsay. Therefore, Plaintiff concedes that if the proposed testimony of Mr. Brown's children is not subject to a hearsay exception, then such testimony is inadmissible and Plaintiff will not be able to demonstrate a genuine issue of material fact on the issue of whether Mr. Brown's stroke was caused by the ingestion of Contac $^{(R)}$. Causation is a necessary predicate to each legal theory upon which Plaintiff bases her causes of actions.

Plaintiff claims that although the testimony of Mr. Brown's children regarding what their father told them is hearsay, it is nonetheless subject to the exceptions listed in Federal Rule of Evidence 803(3) and (4)- statements of present physical condition and statements for the purpose of medical diagnosis or treatment. The Plaintiff is incorrect. First, Federal Rule of Evidence 803(4) states as follows:

> (4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

As can easily be gleaned from the rule itself, this exception is only applicable in situations where the declarant is making statements concerning the condition of his health to a physician or at a minimum, to someone the declarant expects to diagnose or treat him. The Advisory Committee Notes to this rule state: "Even those few jurisdictions which have shied away from generally admitting statements of present condition have allowed them if made to a physician for purposes of diagnosis and treatment..." The Seventh Circuit has explained that the rationale for the

exception is that "a person who believes that he is or may be ill or injured has a strong incentive to tell the professional from whom he seeks diagnosis or treatment the truth about his medical history, symptoms, etc. because if he doesn't it will be harder for the professional to diagnose his problem and treat it effectively." *United States v. Newman*, 965 F.2d 206, 210 (7th Cir. 1992). Plaintiff does not argue that any of Mr. Brown's children were healthcare professionals or that he was seeking treatment from them when he was discussing his ingestion of Contac (R). Therefore, the testimony concerning Mr. Brown's statements made to his children does not fall within the hearsay exception provided by Federal Rule of Evidence 803(4) and is inadmissible.

> Second, Federal Rule of Evidence 803(3) states as follows:
>
> (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Mr. Brown's purported statements do not touch upon his then existing state of mind, emotion, sensation or physical condition. Instead, they are statements of a recollection he was then experiencing- that he had taken Contac (R) at the various earlier times mentioned to his children. As such, they are precisely the type of statements excluded from the hearsay exception- "not including a statement of memory or belief to prove the fact remembered..." Fed. R. Evid. 803(3). Since Mr. Brown's various statements to his children concerning when he took Contac (R) were statements of memory offered by the Plaintiff to prove that he in fact took the Contac (R) at those times, they are inadmissible. Evidence relied upon during summary judgment proceedings must be competent evidence of a type otherwise admissible at trial. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

*Sufficiency of the Remaining Evidence*

Without the hearsay testimony of Mr. Brown's children, Plaintiff has not presented any facts that could establish Mr. Brown took Contac $^{(R)}$ within seventy two hours of suffering a stroke. Plaintiff is therefore unable to provide the foundation upon which any expert testimony concerning causation would even be relevant, as established by the summary judgment and *Daubert* orders of the multidistrict litigation pretrial proceedings, because she cannot establish that Mr. Brown took the medication within seventy two hours of having the stroke. The only admissible testimony on which Plaintiff can rely is her own and that of the treating and consulting physicians; none of which supports her theory of causation.

The physicians' opinions and testimonies all either cite hypertension as the cause of the decedent's stroke or express no opinion as to its cause. As such, Plaintiff has not provided any evidence from which she can establish the necessary component of causation in each of her remaining causes of action.[3] Illinois case law establishes that to defeat a motion for summary judgment in cases where expert testimony is necessary to prove the allegations of the cause of

---

[3] Invariably, every cause of action contemplated by Illinois law alleged in the Amended Complaint requires a plaintiff to demonstrate the harm was proximately caused by the Defendant. *See Kelly v. Sears Roebuck and Co.*, 645 720 N.E.2d 683, 692, 308 Ill.App.3d 633,(1999) (fraudulent concealment); *Babich v. River Oaks Toyota*, 2007 WL 3332709 (negligence); *Kopley Group V. L.P. v. Sheridan Edgewater Prop., LTD.*, 876 N.E.2d 218, 228, 376 Ill.App.3d 1006 (2007) (negligent misrepresentation); *Mueller by Math v. Comty. Consol. School Dist. 54*, 678 N.E.2d 660, 667, 287 Ill.App.3d 337, 346 (1997) (negligence per se); *Twitty v. American Gage and Mach. Co.*, 434 N.E.2d 493, 494, 105 Ill.App.3d 455, 457 (1982) (strict product liability based on defective design or failure to warn); *Warren v. Coca-Cola Bottling Co. of Chicago*, 519 N.E.2d 1197, 1202, 166 Ill.App.3d 566,572 (1988) (breach of implied warranty of merchantability); *Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 237, 349 Ill.App.3d 688, 696 (2004) (implicitly recognizing that a plaintiff must be able to prove the product's defect, against which the manufacturer expressly warranted, caused the plaintiff's harm; *see also* 63 Am. Jur. 2d *Products Liability* § 675); *Rice v. White*, 874 N.E.2d 132, 144, 374 Ill.App.3d 870, 884 (2007) (wrongful death).

action, the plaintiff must present expert testimony. *Baltus v. Weaver Div. of Kidde & Co.*, 557 N.W.2d 580, 584, 199 Ill. App.3d 821, 827 (1990). Plaintiff even concedes in her opposition brief that expert testimony in this case would be necessary for her to prove her allegations.

A plaintiff must establish a credible basis 1) for a reasonable inference that a condition of an allegedly defective product proximately caused the plaintiff's injury and 2) for elimination of reasonable secondary causes. *Baltus*, 557 N.W.2d at 587. The *Baltus* court explained that there can be no permissible inference of defectiveness arising from the mere fact that an injury occurred. *Id*. at 587 (citing *Phillips v. U.S. Waco Corp.*, 516 N.E.2d 670, 674, 163 Ill.App.3d 410, 416-17). Factfinders are forbidden from engaging in speculation. *Id*. at 587 (citations omitted). The *Baltus* court also noted that product liability actions often involve specialized knowledge and expertise outside the general scope of an ordinary person's knowledge. *Id*. at 588.

Several other courts applying Illinois law have focused on a product liability plaintiff's failure to use expert testimony to demonstrate the existence of genuine issues of material fact in summary judgment proceedings. *See, e.g., Fulton v. Theradyne Corp.*, 2007 WL 772953 (N.D.Ill. Mar. 12, 2007) (granting summary judgment and held that in products liability and negligence cases involving specialized product and "specialized knowledge," expert testimony is required); *Langer v. Dista Products Co.*, 1996 WL 526763 (N.D.Ill. Sept.12, 1996) (granting summary judgment in a case in which plaintiffs alleged that ingestion of Prozac led to a suicide attempt, noting that "under Illinois law, 'expert testimony shall be necessary and proper in a case . . . where a drug manufacturer's liability for a prescription is based upon its failure to provide adequate warnings.'") (citing *Northern Trust Co. v. Upjohn Co.*, 572 N.E.2d 1030, 1036

(Ill.App.Ct. 1991)) ; *Muller v Synthes Corp.*, 2002 WL 460827 (N.D.Ill. Mar. 26, 2002) (summary judgment in a product liability case involving a surgical implant device, and noting that plaintiff could not avoid summary judgment against her claim of product liability or breach of warranty without presenting expert testimony).

Here, the only admissible opinion testimony regarding specific causation was provided by Mr. Brown's treating and consulting physicians. Plaintiff concedes that three of the four physicians concluded to a reasonable degree of medical certainty that his stroke was caused by hypertension. One physician declined to make any opinion. None of them opined that the ingestion of Contac $^{(R)}$ caused the stroke. Plaintiff has not presented any admissible evidence from which a reasonable factfinder could conclude either 1) that Mr. Brown ingested Contac $^{(R)}$ within seventy two hours of suffering a stroke or 2) that Contac $^{(R)}$ caused Mr. Brown's stroke. Summary Judgment is granted to Defendant on all Counts (i.e.- causes of action) of the Amended Complaint.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

**Dated: January 18, 2008**